IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MAE ANDERSON, on her own behalf and as Administrator for the Estate of GLENN ANDERSON, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 08 C 5763 |
| v. | ) ) ) | Judge Guzman |
| CITY OF CHICAGO, OFFICER JAEHO JUNG, OFFICER SHAUN MENAGH, OFFICER MATTHEW SCHALLER, and OFFICER JOHN KENNEDY, | ) ) ) ) ) ) | Magistrate Judge Mason |
| Defendants. | ) | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

NOW COMES Plaintiff, MAE ANDERSON, on her own behalf and as Administrator for the Estate of her deceased son, GLENN ANDERSON, and complaining of Defendants, CITY OF CHICAGO, OFFICER JAEHO JUNG, OFFICER SHAUN MENAGH, OFFICER MATTHEW SCHALLER, and OFFICER JOHN KENNEDY, states as follows:

### Introduction

1.  This action, arising out of the death of Glenn Anderson ("Decedent") caused by one or more of the Defendant Officers and the City of Chicago, is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Decedent's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2.  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all

parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## The Parties

3. Decedent, Glenn Anderson, was a lifelong resident of Chicago, Cook County, Illinois.

4. The individual Chicago police officers, Officer Jaeho Jung, Officer Shaun Menagh, Officer Matthew Schaller, and Officer John Kennedy, collectively the "Defendant Officers," were, at the time of this occurrence, duly licensed Chicago Police Officers. They engaged in the conduct complained of while on duty in the course and scope of their employment and under color of law. They are sued in their individual capacities.

5. Defendant City of Chicago, ("City") is a municipal corporation duly incorporated under the laws of the State of Illinois, which operates the Chicago Police Department. The City Council is the final policy maker for the City of Chicago with regard to police policies and practices. The City Council has delegated to the Superintendent of Police the authority and responsibility for the day to day operation of the Department.

## Background

6. On November 11, 2006, Glenn Anderson was walking down the street when approached by Defendant Chicago police officers Schaller and Jung.

7. The Defendant Officers Schaller and Jung restrained Mr. Anderson. Defendant Officers Menagh and Kennedy arrived on the scene shortly thereafter.

8. The Defendant Officers repeatedly struck Mr. Anderson, handcuffed him, beat him and/or tasered him repeatedly.

9. The amount of force used by the officers was unnecessary and excessive. Even after Mr. Anderson was already handcuffed, the Defendant Officers continued to beat him.

10. Mr. Anderson died as a result of the Defendant Officers' use of excessive force.

**The City's Responsibility**

11. The City of Chicago maintains a de facto policy, practice and custom of failing to properly train, supervise, discipline and control its officers, which was the moving force behind the use of excessive force against Mr. Anderson.

12. Municipal policy-makers have long been aware of the City's policy and practice of failing to properly train, monitor and discipline its police officers:

  a. In 1999, following two high profile incidents of excessive force, the City Council held public hearings on the prevalence of excessive force, as well as the failure of the Department's disciplinary system. At those hearings, members of the Council assured the public that changes would be made to the Chicago Police Department policies and practices to address these issues.

  b. On September 28, 1999, the then-Superintendent of police gave a speech highlighting problems with the City of Chicago's policies and practices relating to the use of force. Superintendent Hillard spoke specifically of the need for (1) better in-service training on the use of force; (2) early detection of potential problem officers; (3) an effective disciplinary system, and (4) officer accountability for the use of force.

  c. In a review commissioned by the Superintendent, John Marshall Law School found that although the City of Chicago's written policy on the use of force was in compliance with the law, more training of police officers was necessary for the written policy to be effective in practice.

3

d. A few months later, in January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

e. A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

f. Two years later, a federal jury in the case of *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department. The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off duty Chicago police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. *Id.* at *1.

g. Responding to highly publicized events of criminal conduct by Chicago police officers in the summer of 2008, Police Superintendent Weiss admitted that there had been "an atmosphere" within the Department in which officers felt they were "above the law."

13. Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address

that failure. Redress that was specifically promised by the City Council and the Superintendent has gone unfilled.

14. For example, the City's training program has not changed since 1999, despite repeated promises by the City for a more comprehensive training program. As a result, officers on the streets of Chicago are ill-equipped to make the necessary decisions on the use of force. Further, this lack of training greatly increases of the susceptibility of officers to improper and violent abuses of their police power through the unjustified use of force, such as that at issue in this case.

15. Similarly, the City has failed to institute any system for recognizing problem officers or to ensure an effective disciplinary system.

16. As a result of the City's policies, practices and customs, its officers are emboldened to use unlawful force by their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

17. At the time that the Defendant Officers used excessive force, they knew that the City would not subject them to any meaningful investigation, discipline or criminal prosecution. Their misconduct in this case was a direct result of the City's unconstitutional policies, practices and customs.

**Count I – 42 U.S.C. § 1983**
**Fourth Amendment – Excessive Force**

18. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

19. As described in the preceding paragraphs, the conduct of the Defendant Officers, acting under color of law, constituted excessive force in violation of the United States Constitution.

20. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Decedent's constitutional rights.

21. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

22. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

    b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago police officers accused of excessive force can be confident that the Department will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in excessive force;

    c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

    d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report

misconduct committed by other officers, such as the misconduct at issue in this case;

  e. As a matter of express policy, the City of Chicago does not retain any records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career.

  f. Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers; and

23. As a result of the Defendant Officers' unjustified and excessive use of force, as well as the City of Chicago's policy and practice, Decedent experienced conscious pain and suffering, his Estate has incurred funeral expenses and Plaintiff has suffered injury and emotional distress, including loss of society and companionship.

## Count II – 42 U.S.C. § 1983

### Failure to Intervene

24. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

25. During the physical abuse of Glenn Anderson, as described more fully above, one or more of the Defendant Officers stood by and watched without intervening to prevent the violence to which Mr. Anderson was subjected.

26. As a result of the failure of these Defendant Officers to intervene to prevent the unjustified and excessive use of force, Glenn Anderson suffered pain and injury, as well as emotional distress. These officers had a reasonable opportunity to prevent the harm had they been so inclined, but failed to do so.

27. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in preceding paragraphs.

### Count III – State Law Claim
### Wrongful Death – Battery

28. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

29. As described more fully in the preceding paragraphs the actions of the Defendant Officers constituted offensive physical contact made without the consent of Decedent.

30. The Defendant Officers' actions were undertaken intentionally, willfully and wantonly or were willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

31. The Defendant Officers' conduct was the proximate cause of Decedent's great bodily harm and death, as well as Plaintiff's great pain and suffering.

32. As a result of the Defendant Officers' actions, the Estate has incurred funeral expenses and suffered injury, including loss of society and companionship.

### Count IV - State Law Claim
### Survival Action - Battery

33. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

34. As described more fully in the preceding paragraphs, in restraining Decedent, the actions of the Defendant Officers constituted offensive physical contact made without the consent of Decedent.

35. The Defendant Officers' actions were undertaken intentionally, willfully and wantonly or were willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

36. The Defendant Officers' actions proximately caused Decedent great bodily harm, pain and suffering, and then death.

37. As a result of the Defendant Officers' actions, Decedent experienced conscious pain and suffering.

## Count V – State Law Claim
### 745 ILCS 10/9-102

38. Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth here.

39. Defendant City of Chicago is the employer of all of the Defendant Officers.

40. The Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages and, because the Defendant Officers acted maliciously, wantonly, or oppressively, Plaintiff seeks punitive damages against the individual Defendant Officers in the individual capacities, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

Respectfully submitted,

\_\_\_/s/ Amanda Antholt\_\_\_\_
Attorneys for Plaintiff

Christopher Smith
Robert Johnson
Amanda Antholt
James Baranyk
Smith, Johnson & Antholt, LLC
112 S. Sangamon Street, 3rd Floor
Chicago, IL 60607
(312) 432-0400

## **CERTIFICATE OF SERVICE**

  I, Amanda Antholt, an attorney, certify that on November 10, 2008, I served this document by ECF electronic filing to counsel for all parties.

              /s/ Amanda Antholt